UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-02498

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| HORIZON PARK PARTNERS, LLC, a | : |
| Delaware limited liability company; | : |
| | : |
| DOLLAR TREE STORES, INC., a Virginia | : |
| corporation; | : |
| | : |
| DILLON COMPANIES, LLC, a Kansas limited | : |
| liability company; | : |
| | : |
| RANCH AND HOME SUPPLY OF | : |
| COLORADO, INC., a Montana corporation; | : |
| and | : |
| | : |
| RANCH AND HOME SUPPLY, LLC, a | : |
| Montana limited liability company; | : |
| | : |
| Defendants. | : |
| _____/ | |

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, HORIZON PARK PARTNERS, LLC, a Delaware limited liability company; DOLLAR TREE STORES, INC., a Virginia corporation; DILLON COMPANIES, LLC, a Kansas limited liability company; and RANCH AND HOME SUPPLY OF COLORADO, INC., a Montana corporation; and RANCH AND HOME SUPPLY, LLC, a Montana limited liability company, (sometimes referred to as

"Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant HORIZON PARK PARTNERS, LLC owns the Horizon Park Center at and near 2255 Main Street, Longmont, Colorado 80501, in Boulder County ("Horizon Park Center").

3.      Defendant DOLLAR TREE STORES, INC.'S store is located in the Horizon Park Center ("Dollar Tree").

4.      Defendant DILLON COMPANIES, LLC's grocery store, King Soopers, is located in the Horizon Park Center ("King Soopers").

5.      Defendants RANCH AND HOME SUPPLY, INC.'s and RANCH AND HOME SUPPLY, LLC's store, Murdoch's Ranch & Home Supply, is located in the Horizon Park Center ("Murdoch's").

6.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the Horizon Park Center.   The Defendants' Horizon Park Center, Dollar Tree, King Soopers and Murdoch's are located in and do business within this judicial district.

7.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

8.      Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

9. The Horizon Park Center is a place of public accommodation.

10. Dollar Tree is a place of public accommodation.

11. King Soopers is a place of public accommodation.

12. Murdoch's is a place of public accommodation.

13. Defendants are each responsible for complying with the obligations of the ADA.

14. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

15. Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

16. Fred Nekouee has visited the Horizon Park Center which forms the basis of this lawsuit on October 1, 2018; February 6, 2019; and on May 8, 2019; and he bought goods and sought to avail himself of the goods and services at the Horizon Park Center on such dates.

17. Fred Nekouee visited and bought food at Dollar Tree on October 1, 2018 and on February 6, 2019.

18. Fred Nekouee visited and bought groceries at King Soopers on October 1, 2018 and on May 8, 2019.

19. Fred Nekouee visited Murdoch's and bought work gloves there on February 6, 2019.

20. Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018 and again on May 8, 2019.

21.     Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

22.     Fred Nekouee also visited the Longmont, Colorado area from February 3-7, 2019.

23.     Fred Nekouee plans to return to the Horizon Park Center to avail himself of the goods and services offered to the public at the Horizon Park Center, Dollar Tree, King Soopers, and Murdoch's.

24.     The Plaintiff has definite plans to return to the area and to the Horizon Park Center, Dollar Tree, King Soopers, and Murdoch's in late September or early October 2019.

25.     The Horizon Park Center, Dollar Tree, King Soopers, and Murdoch's are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

26.     The Plaintiff likes the broad range of inexpensive items for sale at Dollar Tree in the Horizon Park Center.

27.     The Plaintiff plans to return to Dollar Tree to shop.

28.     The Plaintiff likes the groceries and fruit at King Soopers.

29.     The Plaintiff likes to bring grocery items and fruit back to his hotel room or to eat in his vehicle.

30.     The Plaintiff plans to return to King Soopers to buy groceries.

31.     The Plaintiff likes the work wear and home supply items offered for sale at Murdoch's.

32.     The Plaintiff plans to return to Murdoch's to shop.

33.     For the reasons set forth in paragraphs 15-32 and 47, Fred Nekouee plans to return to the Horizon Park Center and to Dollar Tree.

34.     The Plaintiff has encountered architectural barriers at the Horizon Park Center.

35.     The barriers to access that the Plaintiff encountered at the Horizon Park Center have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the Horizon Park Center, and have impaired his use of the restrooms there.

36.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

37.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

38.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

39.     On his visit to Horizon Park Center, the Plaintiff encountered excessively steep slopes in its parking lot.

40.     The cross slopes of the access aisles serving the parking spaces for disabled patrons in front of King Soopers are steeper than 1:48 and also steeper than 3.1%.

41.     The cross slope of the walking surface in front of Dollar Tree on the accessible route to the entrance of Dollar Tree is steeper than 1:48 and also steeper than 3.1%.

42.     The Plaintiff encountered and observed barriers to access in the men's restroom in Dollar Tree; and so, he also checked out the women's restroom in Dollar Tree, in which restroom he also encountered and observed barriers to access.

43.     The Plaintiff encountered and observed barriers to access in the men's restroom in King Soopers; and so, he also tried to use the women's restroom in King Soopers, in which women's restroom he also encountered and observed barriers to access.

44.     The Plaintiff encountered and observed barriers to access in the men's restroom in

Murdoch's.

45.    The Plaintiff is deterred from visiting the Horizon Park Center even though he enjoys its goods, because of the difficulties he will experience there until the Horizon Park Center is made accessible to him in a wheelchair.

46.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Horizon Park Center as described but not necessarily limited to the allegations in paragraph 52 of this Complaint.  Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

47.    Fred Nekouee desires to visit the Horizon Park Center not only to avail himself of the goods and services available at the Horizon Park Center but to assure himself that the Horizon Park Center is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Horizon Park Center without fear of discrimination.

48.    The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

49.    The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

50.    Physical conditions that exist at the Horizon Park Center are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 52 below

51.    Preliminary inspections of the Horizon Park Center show that violations of the

ADA exist as set forth in paragraph 52 below.

52.     The violations of the ADA that Fred Nekouee personally encountered or observed at the Horizon Park Center include, but are not limited to:

**PARKING**

a.   (i) In the parking lot, the parking spaces for disabled patrons in front of Murdoch's do not have upright signage with the International Symbol of Accessibility.   (ii) For these parking spaces, there are no upright signs with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of upright signage, and it deters him from visiting the Horizon Park Center and Murdoch's.   (iv) The action required to install upright signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, the parking space for disabled patrons in front of Tacos Don Jose's in Horizon Park Center with van accessible signage is less than 132 inches wide. (ii) This parking space with van accessible signage is about 105 inches wide and less than 132 inches wide, when the access aisle width is 60 inches, in violation of Federal Law 2010, ADAAG § 502.2.   (iii) Due to its lack of width, it was difficult for the Plaintiff to load and unload from his vehicle.   (iv) The action required to restripe this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) The access aisle for the van accessible parking space in front of Tacos Don Jose's is less than 96 inches wide (2440 mm).   (ii) In the alternative, if the van accessible parking space in front of Tacos Don Jose's is less than 132 inches wide, here 96 inches wide, then the access aisle must be at least 96 inches wide, which access aisle is only about

63 inches wide, in violation of Federal Law 2010, ADAAG § 502.2.   (iii) It was difficult for the Plaintiff to use this access aisle due to its width.   (iv) The action required to restripe this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i)   In the parking lot, the front section (nearer the upright parking sign) of the parking space for disabled patrons in front of King Soopers shown in the photographs below has a running slope that is steeper than 1:48 and this parking space has a cross slope that is steeper than 1:48.   (ii) The running slope of the front section of this parking space is steeper than the maximum allowed slope of 1:48 and as steep as 1:20 (5%) and this parking space has a cross slope as steep as about 1:19.2 (5.2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered these slopes in this parking space and it made his wheelchair unstable and difficult for him to unload from and load back into his vehicle.   (iv) The action required to reduce the running and cross slopes of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





e.   (i) In the parking lot, the parking space for disabled patrons in front of King

Soopers shown in the photograph below has a cross slope that is steeper than 1:48.   (ii)

This parking space for disabled patrons has a cross slope that is steeper than 1:48 and as steep as about 1:25.6 (3.9%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope in this parking space and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



f.   (i) In the parking lot, the parking space for disabled patrons with a sign with the term "van accessible" adjacent to the parking space shown in the photographs above in subparagraph (e) above with the black vehicle parked in it, has a cross slope that is steeper than 1:48.   (ii) This parking space for disabled patrons has a cross slope that is steeper than 1:48 and as steep as about 1:23.3 (4.3%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii)   The Plaintiff observed the slope in this parking space for disabled patrons

and it deters him from wanting to visit the Horizons Park Center and King Soopers.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) In the parking lot, the cross slopes of the access aisles adjoining the parking spaces for disabled patrons described in subparagraphs (a) through (f) above all have cross slopes that are steeper than 1:48.   (ii) The cross slopes of these access aisles are steeper than 1:48 and steeper than about 1:23.9 (4.2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered and observed the cross slopes in these access aisles, and these cross slopes made his wheelchair unstable and made it difficult for him to unload from and load back into his vehicle.   (iv) The action required to reduce the cross slopes in these access aisles is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The cross slope of the walking surface (sidewalk) along the accessible route to the entrance to King Soopers is steeper than 1:48.   (ii) The cross slope of the walking surfaced along the accessible route to the entrance to King Soopers is steeper than 1:48 and as steep as about 1:20 (5%), in violation of Federal Law 2010, ADAAG § 404.3.   (iii) The Plaintiff encountered this steep cross slope while moving in his wheelchair along the accessible route to the entrance to King Soopers and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The cross slope of the walking surface (sidewalk) along the accessible route to the entrance to Dollar Tree and near the entrance to Dollar Tree is steeper than 1:48.   (ii) The cross slope of the walking surfaced along the accessible route to the entrance to Dollar

Tree is steeper than 1:48 and as steep as about 1:16.7 (6%), in violation of Federal Law 2010, ADAAG § 404.3. (iii) The Plaintiff encountered this steep cross slope while moving in his wheelchair along the accessible route to the entrance to Dollar Tree and it made his wheelchair unstable. (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

j. (i) The slope of the surface within the entrance door maneuvering space of 60 inches outside of the entrance to Dollar Tree is steeper than 1:48. (ii) The slope of the surface within the entrance door maneuvering space of 60 inches outside of the entrance to Dollar Tree is steeper than 1:48 and steeper than about 1:12, in violation of Federal Law 2010, ADAAG § 404.2.4.4. (iii) The Plaintiff encountered this steep slope while maneuvering his wheelchair to enter Dollar Tree, and this slope of this surface caused his wheelchair to slip sideways, and he required assistance to enter Dollar Tree. (iv) The action required to reduce the slope of this entrance door maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN KING SOOPERS**

k. (i) The length of time for the door to the men's restroom in King Soopers to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds. (ii) The length of time for the door to this men's restroom to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) Due to the short time for this door to the men's restroom to close, the door closed on his wheelchair before the Plaintiff could not make it through the door. (iv) The action

required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) In the men's restroom in King Soopers, the side wall grab bar in the toilet compartment does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches (1370 mm) from the rear wall and only extends about 46 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1. (iii) Due to its lack of adequate extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) In the men's restroom in King Soopers, the space between the top of the rear wall grab bar and the bottom of the toilet seat cover dispenser above it is less than 12 inches.   (ii) The space between the top of the rear wall grab bar and the bottom of the toilet seat cover dispenser above it is less than 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to the location of the toilet seat cover dispenser, it was difficult for the Plaintiff to use the rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this toilet seat cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) In the men's restroom in King Soopers, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and as high as about 44 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. (iii) Due to the height of this mirror's reflecting surface above the finish floor, the Plaintiff

could not see his full face in this mirror while sitting in his wheelchair.  (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In the men's restroom in King Soopers, the liquid soap dispenser outlet is higher than 48 inches above the floor.   (ii) The outlet to this liquid soap dispenser is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, from his wheelchair, the Plaintiff could not obtain soap from this outlet on his own.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN KING SOOPERS**

p.   (i) The length of time for the door to the women's restroom in King Soopers to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The length of time for the door to this women's restroom to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this door to the women's restroom to close, the door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

q. (i) In the women's restroom in King Soopers, a door pull is not provided on both sides of the door to the toilet compartment near the latch.   (ii) A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG §

604.8.1.2.   (iii) Due to the lack of a door pull on the door to the accessible toilet compartment, the Plaintiff could not fully close the door when he used the toilet.   (iv) The action required to install door pulls on both sides of the door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the women's restroom in King Soopers, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than 18 inches.   (ii) This door pull side maneuvering clearance in front approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance space, the Plaintiff required assistance to exit the women's restroom while moving in his wheelchair.   (iv) The actions required to relocate this trash can and to put in place a written policy not to place a trash can by this door are easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) n the women's restroom in King Soopers, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to install a dispenser that holds extra rolls in a vertical position so that the centerline of where

the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In the women's restroom in King Soopers, the operation of the latch on the accessible toilet compartment door requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this latch on this accessible toilet compartment door requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff could not operate this door latch with a closed fist or loose grip.   (iv) The action required to replace this latch (door hardware) is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the women's restroom in King Soopers, the side wall grab bar in the toilet compartment does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches (1370 mm) from the rear wall and only extends about 46 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1. (iii) Due to its lack of adequate extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the women's restroom in King Soopers, the space between the top of the rear wall grab bar and the bottom of the toilet paper dispenser above it is less than 12 inches. (ii) The space between the top of the rear wall grab bar and the bottom of the toilet paper dispenser above it is less than 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to the location of the toilet paper dispenser, it was difficult for the Plaintiff to use the rear wall grab bar to transfer himself from his wheelchair to the

toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the women's restroom in King Soopers, the toilet seat cover dispenser outlet is higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser outlet is higher than 48 inches above the finish floor and is about 56 inches above the finish floor, and this outlet is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, the Plaintiff could not reach a toilet seat cover from this outlet.   (iv) The action required to relocate this toilet seat cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the women's restroom in King Soopers, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is about 65 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting King Soopers.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR TO DOLLAR TREE**

y.   (i) The force needed to open the entrance door to Dollar Tree is greater than 5 pounds.   (ii) The force needed to open the entrance door to Dollar Tree is about 10 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the

Plaintiff required assistance in his wheelchair to open this door to enter Dollar Tree. (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN DOLLAR TREE**

z. (i) The force needed to open the entrance door to the men's restroom in Dollar Tree is greater than 5 pounds. (ii) The force needed to open the entrance door to the men's restroom in Dollar Tree is about 7 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door to enter the men's restroom in Dollar Tree. (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

aa. (i) The length of time for the door to the men's restroom in Dollar Tree to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds. (ii) The length of time for the door to this men's restroom to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) Due to the short time for this door to the men's restroom to close, the door closed on his wheelchair before the Plaintiff could not make it through the door. (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

bb. (i) In the men's restroom in Dollar Tree, the water supply pipes under the sink

are not insulated.   (ii) As shown in the photograph below, the lavatory water supply pipes under the sink in this men's restroom are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation of these water supply pipes under the sink in this men's restroom, the Plaintiff risked skin burns and injury to his legs when he used the sink.   (iv) The action required to fully insulate these water supply pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



cc.   (i) In the men's restroom in Dollar Tree, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and as high as about 69 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The

Plaintiff observed the height of this coat hook above the floor, and due to its height above the floor, he could not hang his coat on it, and the height of this coat hook above the floor deters him from visiting Dollar Tree.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN DOLLAR TREE**

dd.         (i) The length of time for the door to the women's restroom in Dollar Tree to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The length of time for the door to this women's restroom to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this door to the women's restroom to close, the door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

ee.     (i) In the women's restroom in Dollar Tree, the water supply and drain pipes under the sink are not insulated.   (ii) As shown in the photograph below, the lavatory water supply and drain pipes under the sink in this women's restroom are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation of these water supply and drain pipes under the sink in this women's restroom, the Plaintiff risked skin burns and injury to his legs when he used the sink.   (iv) The action required to insulate these water supply and drain pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



**MEN'S RESTROOM IN MURDOCH'S RANCH & HOME SUPPLY**

ff.    (i) The force needed to open the entrance door to the men's restroom in Murdoch's is greater than 5 pounds.   (ii) The force needed to open the entrance door to the men's restroom in Murdoch's is about 8 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door to enter the men's restroom in Murdoch's.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

gg.    (i) The length of time for the door to the men's restroom in Murdoch's to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.

(ii) The length of time for the door to this women's restroom to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this door to the men's restroom to close, the door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the men's restroom in Murdoch's, a door pull is not provided on both sides of the door to the accessible toilet compartment near the latch.   (ii) A door pull is not provided on both sides of the door to the accessible toilet compartment near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull, it was difficult for the Plaintiff to use this door.   (iv) The action required to install a door pull on both sides of this compartment door is easily accomplishable and able to be carried out without difficulty or expense.

ii.   (i) In the men's restroom in Murdoch's, the side wall grab bar in the toilet compartment does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar only extends 49 inches from the rear wall and does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to its lack of adequate extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again. (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In the men's restroom in Murdoch's, the height of the sink's rim surface is

higher than 34 inches above the floor.   (ii) The height of this sink's rim surface is about 36 inches and higher than 34 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 606.3.   (iii) Due to the height of the this sink's rim surface above the floor, the Plaintiff had difficulty using this sink.   (iv) The action required to adjust the height of this sink is easily accomplishable and able to be carried out without much difficulty or expense.

kk.   (i) In the men's restroom in Murdoch's, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the water closet.   (ii) The centerline of this toilet paper dispenser is not between 7 and 9 inches from the front of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of this toilet dispenser and where it dispenses toilet paper, the Plaintiff could not reach toilet paper from a normal sitting position in the toilet.   (iv) The action required to relocate or to replace this toilet paper dispenser with an ADA compliant dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

ll.   (i) In the men's restroom in Murdoch's, the lever to the paper towel dispenser is higher than 48 inches above the floor.   (ii) This lever to this paper towel dispenser is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, the Plaintiff could not operate this lever from his wheelchair to obtain a paper towel from this dispenser.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

53.   All of the foregoing violations are also violations of the 1991 Americans with

Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

54.     The discriminatory violations described in paragraph 52 are not an exclusive list of the Defendants' ADA violations.  Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

55.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

56.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

57.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

58.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

59.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

60.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

61.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

62.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Horizon Park Center, Dollar Tree, King Soopers, Murdoch's and the parking lot, access aisles and walkways to

make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze

Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*